## Commonwealth, for Use, etc., et al. v. Coleman, et al.

(Decided January 23, 1925.)

### Appeal from McCracken Circuit Court.

College and Universities—Treasurer of State College, in View of Control Over Him of Board of Trustees, Held Merely Bailee of Funds and Not Insurer of their Safety.—Where, under Acts 1918, c. 18, amended by Acts 1922, c. 100, the board of trustees of State Industrial College was given unlimited control over its agents, including the treasurer, and funds in the hands of treasurer, and in compliance with order of board treasurer deposited them in depository designated by board he was merely a bailee, and in no sense an insurer of safety of funds.

J. BELL NICHOLS and NICHOLS & NICHOLS for appellants.

WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

By an act of the General Assembly, approved March 23, 1918, the state of Kentucky practically took over the Western Kentucky Industrial College for Colored Persons at Paducah, Ky. The act makes appropriations for the maintenance and operation of the institution and for

completing and equipping the buildings thereof then in use, and the payment of debts, and provides that such appropriations shall not be paid until the title to the buildings and site then in use by the institution shall be conveyed to the Commonwealth. It created a board of trustees which should have general supervision of the affairs of the institution, and the expenditure of the appropriation so made. It provided for the appointment of three trustees by the Governor, and made the president of the institution and the county superintendent of common schools of McCracken county ex-officio members of such board.

It provides that the sums so appropriated should be paid to the county superintendent of McCracken county, and should be used as directed in the act, under the supervision of the board of trustees, and requires that such superintendent should, before receiving the same, execute bond to the Commonwealth to be approved by the county judge of that county.

By an amendment, approved March 24, 1922, certain appropriations made in the original act were increased, but the general tenor of the original act was left unimpaired.

Under the provisions of these acts appellee Coleman, county superintendent, qualified as treasurer of the board and executed bond as such under its requirements.

This is an action by the Commonwealth for the use and benefit of the board against Coleman and his surety on such bond because of his failure to pay, under the orders of the board, certain parts of a building fund which came to his hands to the persons designated in the orders of the board.

A demurrer to the answer of the defendants was overruled, and no further pleading being offered or filed the cause was by agreement submitted to the court for judgment without the intervention of a jury, and each party declining to introduce evidence, the court on the pleadings dismissed the plaintiff's action, and from that judgment this appeal is prosecuted.

The answer, after denying certain conclusions of law set forth in the petition, alleges that the board of trustees had the right to select a depository wherein the funds under its control should be kept and maintained, and that said board did order and direct the defendant Coleman to place all such money coming into his hands as treasurer on deposit in a banking institution in Paducah known

as the Ohio Valley Trust Company; it is alleged that all the funds so coming into his hands as treasurer of the board were under the control of said board of trustees, and that all of same was by such board, acting through the defendant Coleman as its agent, servant and treasurer, deposited in the said Ohio Valley Trust Company in obedience to explicit directions so to do by said board of trustees acting in its official capacity, in obedience to a resolution adopted by said board directing said treasurer so to do; and that the defendant Coleman at the time he was so ordered and directed to deposit such funds coming to his hands as treasurer, in the exercise of a sound discretion believed and had a right to believe that the said Ohio Valley Trust Company was a safe, sound and conservative banking institution with which he might safely leave said funds, and then alleges that said trust company was a safe and sound going banking institution at the time each and every and all of such deposits were made therein; and that said defendant Coleman in addition to compliance with the order of said board to deposit said funds in the said banking institution, in the exercise of his independent judgment believed said institution was safe and sound, and that he therefore exercised due care in the management and keeping of such funds.

It is alleged that the said funds, or a portion of them, remained for a long time upon deposit in such trust company to the credit of Coleman as treasurer, and from time to time he issued checks against the same when so ordered and directed to do by the board; that on and prior to April 12, 1924, Coleman as such treasurer had on deposit in the said banking institution the sum of $2,436.43, but on or about that date, without fault upon his part, the said Ohio Valley Trust Company became financially involved and unable to meet its obligations, and went into the hands of a receiver from the banking department of this state, and that its affairs are now being liquidated under the supervision of that department; and it is alleged that defendants are informed and believe, and charge it to be true, that in the near future all the depositors in the said institution, including said Coleman as treasurer, will be paid in full. It is alleged that prior to the closing of such institution as aforesaid, defendant Coleman had no reason to believe or suspect that the said banking institution was not at all times, up to the date of its suspension, a safe, sound and trust-

worthy banking institution, and that he did so believe at all times, up to the time the same went into the hands of a receiver, and that therefore in depositing the said funds in the said institution he acted with due care and in the exercise of a high degree of care.

The section of the act designating the county superintendent as treasurer is as follows:

"That the sums of money hereby appropriated, shall be paid to the county superintendent of the common schools of McCracken county, and shall be used as herein directed, under the supervision of the board of trustees for said industrial college as hereinafter provided for.

Thereafter in the section creating the board it is provided that the same

"shall have general supervision of its affairs and the expenditure of the appropriation herein made."

Then later in the same section it is further provided:

"The said board of trustees of the West Kentucky Industrial College shall have power to adopt by-laws, rules and regulations for the government of its members, official agents, employees, and a general management of said college."

The only question which we have deemed it necessary to consider is whether under these broad powers thus given to the board of trustees, it had the authority by its official action to adopt a rule or regulation designating a depository in which should be deposited the funds nominally in the hands of its treasurer, but really under its direct control.

The language of the quoted provisions of the act appears to disclose not only the purpose by the General Assembly to place the general control and supervision of this institution in the board of trustees, but the last quotation in particular evidences an additional purpose to give the board by the adoption of rules and regulations, practically unlimited control, not only of its several members, but over its official agents and employees. Therefore, either as a member of the board or as agent of the board who had been designated treasurer, he was bound by the action of the board not only in paying out the funds in his hands to whomsoever it might direct, but in the management and control and safekeeping of such funds. The power given to adopt rules and regulations

designed to control the official action of the board's agents and employees seems necessarily to embrace the power to control the depository where such funds under such control of the board should be deposited. Nor is the fact that the statute requires the treasurer to execute a bond inconsistent with such broad and comprehensive control which it places in the board itself over such funds.

The board here is therefore in the attitude of asking a judgment against its agent, nominally in the custody of its funds, but the control of which is essentially with the board itself, because that agent in compliance with its explicit order, made in the exercise of a power given it by statute, deposited the funds in a banking institution designated by it which subsequently thereto became at least temporarily unable to meet its obligations. A statement of the proposition readily discloses the injustice that would result to the agent; for, he being under the control of the board, and the latter having the statutory power to designate a depository, would be in the position of shouldering a loss because of the act of the board requiring him to deposit the funds in a designated institution.

Not only did the board have the power, under the language of the act, to designate a depository, not only was it the duty of the treasurer, under the terms of the act, to comply with such designation, but having such power the board likewise had the power to enforce by proper measures compliance with such an order.

Certainly, therefore, where the treasurer of an institution only has nominal custody and control of its funds, and the real control as to their safekeeping is in the hands of the board of trustees, when he in compliance with the order of that board deposits them where it directs, he is merely a bailee, and in no sense an insurer of the safety of the funds.

Our conclusion, therefore, is that under the language of the statute involved, and the circumstances set forth in the answer, the treasurer was only a bailee; and this conclusion obviates the necessity of entering into a discussion of the question so ably presented on both sides, and about which there is much division in the authorities, whether a custodian of public funds under ordinary conditions is merely a bailee or an insurer.

Judgment affirmed.

Whole court sitting.